CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
08/29/2019
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | |
|---|---|
| CHRISTOPHER MORGAN,<br><br>                    *Plaintiff,*<br><br>v.<br><br>ON DECK CAPITAL, INC.,<br><br>                    *Defendants.* | CASE NO. 3:17-CV-00045<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

      The Telephone Consumer Protection Act ("TCPA") forbids "any person within the United States . . . [from making] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States. 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA defines "automatic telephone dialing system" as "equipment" with the "capacity" to: "(A) store or produce telephone numbers to be called, using a random or sequential number generator; and (B) dial such numbers." 47 U.S.C. § 227.[1]

      This matter is before the Court upon Defendant On Deck Capital, Inc.'s ("On Deck") motion for summary judgment pursuant to Fed. R. Civ. P. 56(a). Plaintiff Christopher Morgan brought this putative class action under the TCPA, alleging that On Deck placed an unsolicited call to him on June 19, 2019, via an "automatic telephone dialing system" ("ATDS"), a practice prohibited by the TCPA. Also pending is On Deck's motion to strike Plaintiff's proposed expert witness, which is relevant to whether Plaintiff has presented sufficient evidence to survive On

---

[1]     The TCPA has a "broad reach," *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 657 (4th Cir. 2019), and should generally "be construed to benefit consumers." *Daubert v. NRA Group, LLC*, 861 F.3d 382, 390 (3d Cir. 2017).

Deck's motion for summary judgment. The sole issue On Deck presents in its motion for summary judgment is whether a genuine dispute of fact exists as to whether Plaintiff was called on a device that constitutes an ATDS.

For the reasons explained herein, On Deck's motion to strike the testimony of Plaintiff's expert witness Randall Snyder is **GRANTED in part** and **DENIED in part**. Because Snyder's testimony, together with other evidence cited by Plaintiff, creates a genuine dispute of a material fact as to whether the device used to call plaintiff constitutes an ATDS, On Deck's motion for summary judgment must be **DENIED**.

### I. FACTUAL BACKGROUND

Defendant On Deck Capital is an online lender that offers financing to small businesses, and calls individuals who it believes to be interested in a small business loan. (Dkt. 35-1 ¶ 8). Plaintiff owns a small business, Piedmont Hauling, LLC, and has previously filed TCPA claims against other companies. (Dkt. 35-2 ¶¶ 4, 17). Plaintiff originally expressed interest in a loan during a conversation with Floyd Consultancy on June 16, 2017. (Dkt. 35 ¶ 5). Floyd Consultancy is a company that identifies individuals interested in obtaining a small business loan, then provides the individual's contact information to Leads2Results, a company that in turn provides the individual's information to On Deck Capital. (Dkt. 35-3 ¶¶ 6-17). After the call, Floyd Consultancy passed Plaintiff's contact information to Leads2Results, which in turn passed it to On Deck.[2] (Dkt. 35-3 ¶¶ 21-22). On June 19, 2017, On Deck called Plaintiff at approximately 1:35 P.M. (Dkt. 74 at 2).

---

[2] An outstanding issue not addressed in this memorandum opinion is whether On Deck's call to Plaintiff was solicited and consented to by Plaintiff. However, On Deck does not presently seek summary judgment on this issue. (Dkt. 35, fn. 1).

2

There is no dispute that the call at issue was initiated by an On Deck Sales Department representative using the "Manual Touch Mode" dialing domain on a telephone system designed by a company called "Five9." (Dkt. 74 at 5; dkt. 36 at 2). On Deck Capital moves for summary judgment, arguing that there is no genuine dispute that the "Manual Touch Mode" domain does not qualify as an ATDS covered by the TCPA. Plaintiff, on the other hand, argues that the Manual Touch Mode domain is just one aspect of a larger system capable of automatic dialing and thus qualifies as an ATDS.

## II. ANALYSIS

Since the Court's decision on whether to exclude Plaintiff's proposed expert is relevant to whether Plaintiff can present sufficient evidence to withstand On Deck's motion for summary judgment, that issue will be analyzed first.

### A. Motion to Strike Plaintiff's Proposed Expert

#### 1. Rule 702 / *Daubert* Standard

Fed. R. Evid. 104(a) gives district courts the power to decide preliminary questions about whether "a witness is qualified . . . or evidence is admissible." Under Fed. R. Evid. 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

"[A] court may consider whether the expert witness' theory or technique: (1) can be or has been tested; (2) has been subjected to peer review and publication; (3) has a high known or

3

potential rate of error; and (4) is generally accepted within a relevant scientific community." *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 195 (4th Cir. 2017) (citation and internal quotation marks omitted); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593–94 (1993). This list of factors is not exhaustive. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). "[C]ourts may not evaluate the expert witness' conclusion itself, but only the opinion's underlying methodology." *Bresler*, 855 F.3d at 195.

The Supreme Court in *Daubert* concluded that implicit in Rule 702 is a district court's gatekeeping responsibility "to 'ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597). If the expert meets this threshold, criticisms of his or her testimony will go to its weight, not its admissibility. *See Bresler,* 855 F.3d at 195–96. The approach is not limited to the testimony of scientists but applies "to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire*, 526 U.S. at 141 (applying *Daubert* to the testimony of a tire consultant who had spent ten years working on tire design at a major tire manufacturer and had earned his masters degree in mechanical engineering).

"[O]n the most basic level, to be admissible . . . expert testimony must be of 'scientific, technical or other specialized knowledge.'" *Small v. WellDyne, Inc.*, 927 F.3d 169, 177 (4th Cir. 2019) (quoting Fed. R. Evid. 702(a)). "It must not be based on 'belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Id.* (quoting *Oglesby v. General Motors Corp.*, 190 F.3d 244 (4th Cir. 1999)). "And it is not enough for an expert to rely on his subjective belief." *Id.* (citing *Daubert*, 509 U.S. at 590)). "Without testing, supporting literature in the pertinent field, peer reviewed publications or some basis to assess the level of

reliability, expert opinion testimony can easily, but improperly, devolve into nothing more than proclaiming an opinion is true 'because I say so.'" *Id*.

### 2. Motion to Strike Expert: Analysis

On Deck Capital moves to strike Plaintiff's proposed expert, Randall Snyder, who has decades of experience in "wireline and wireless telecommunications networking technology and system architecture." (Dkt. 80 at 2). Snyder has testified in hundreds of TCPA cases. (Dkt. 80-1 ¶ 3). Snyder was retained for the purpose of "ascertaining the full functional capacity of the Five9 dialer" used to place the call to Plaintiff. (Dkt. 80 at 3). Snyder ultimately concludes that the Five9 dialer "has multiple software dialing functions, of which several have automatic dialing capabilities"; "each dialing mode is simply a software function within the overall Five9 dialer system"; and the Five9 dialer system "has the capacity to store or produce numbers to be called, using a random or sequential number generator, and has the capacity to dial numbers from a stored list of numbers automatically." (Dkt. 80 at 3; dkt. 80-1 ¶¶ 58-62). Specifically, Snyder is expected to testify that the Manual Touch Mode used to call Plaintiff is part of the same "system" as On Deck Capital's "VCC system," which does include calling options that involve automatic dialing. (Dkt. 77-1 ¶ 46).

On Deck Capital plans to offer its own expert to dispute these conclusions, but simultaneously contends that Snyder's opinion should be stricken as unreliable under Rule 702 and *Daubert* because Snyder did not physically inspect On Deck Capital's Five9 systems, relying instead on deposition transcripts, Five9 manuals, and public information from Five9.com and Salesforce.com, the "provider of On Deck's customer relationship management software," (*Id*. at ¶ 8); Snyder's opinion are allegedly "diametrically opposed" to conclusions he reached while

testifying in another case, (dkt. 77 at 2); and Snyder failed to consider alternate conclusions in his assessment, making his eventual findings favoring Plaintiff's case a foregone conclusion. *Id*. at 3. On Deck also challenges Snyder's opinion on the basis that it impermissibly offers legal conclusions about whether On Deck's Manual Touch Mode telephone constitutes an ATDS under the TCPA. *Id*. at 2. These arguments will be addressed in reverse order.

1. *Permissibility of Snyder's ATDS conclusion*

It is true, of course, that experts may not offer legal conclusions. *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002). Here, Snyder's ultimate opinion is that "the Five9 dialing system is equipment which has the capacity to sore or produce telephone numbers to be called, using a random or sequential number generator, and to dial such numbers and it is equipment which as the capacity to dial telephone numbers from a stored list of numbers automatically." (Dkt. 74-3 ¶ 57). Although this conclusion tracks the statutory definition of an ATDS, and Snyder recites his understanding of how an ATDS is defined, (*id*. at 4), Snyder's report does not explicitly conclude that the Five9 dialing system is an "ATDS" under the TCPA. To the extent that Snyder attempts to offer an opinion on the legal definition of ATDS, the meaning of the TCPA, or the ultimate legal implications of the facts at issue at trial, those opinions could, and should, be excluded under Rule 702. *Barile*, 286 F.3d at 760. But Snyder does not necessarily offer legal conclusions simply because his opinion about the Five9 system's capacity to make automatically-dialed calls tracks the statutory definition of an ATDS. Rather, Snyder's expected opinion

testimony appears to "embrace[] an ultimate issue of fact" rather than "state[] a legal conclusion." *Id*. (noting that district courts must distinguish between the two).[3]

### 2. *Reliability of Snyder's testimony*

On Deck also contends that Snyder's testimony should be stricken as unreliable for several reasons. First, On Deck argues that Snyder's testimony should be excluded because Snyder reached a different conclusion about a dialing system in a TCPA case where Snyder was retained by the defendant, and second, because Snyder's opinion that On Deck's dialing system had the capacity for automated dialing appears to have been a "foregone conclusion before he began his analysis." (Dkt. 77 at 4). However, these two factors, unlike Snyder's failure to physically inspect On Deck's equipment, goes only to the weight his testimony should be afforded by the trier of fact, rather than the factual basis or reliability of his testimony under Rule 702 and *Daubert*.

However, Snyder's failure to inspect any of On Deck's actual equipment in forming the basis of his opinion presents a thornier issue as to the admissibility of his testimony. Indeed, several courts have stricken Snyder's testimony in past TCPA cases as unreliable on these exact grounds. *See, e.g., Bakov v. Consolidated World Travel, Inc.,* No. 15-c-2080, 2019 WL 1294659, at *9 (N.D. Ill. Mar. 21, 2019) (striking Snyder's testimony as unreliable in part because Snyder "only reviewed testimony and documents" and did not conduct "any testing corroboration, or analysis"); *Legg v. Voice Media Group, Inc.*, No. 13-62044, 2014 WL 1767097, at *5 (S.D. Fla. May 2, 2014) (excluding Snyder's opinion in TCPA case because Snyder's opinion was based "primarily upon his review of a client handbook," Snyder had not tested defendant's equipment,

---

[3] Moreover, the fact that some of Snyder's testimony or report might contain legal conclusions would not justify exclusion of other admissible portions of his testimony. *See, e.g., City of Tuscaloosa v. Harcros Chem., Inc.*, 158 F.3d 548, 564 (11th Cir. 1998).

7

and Snyder did not know whether defendant "actually used the systems discussed in the handbook, or in the manner provided in the handbook"). Other courts have admitted Snyder's expert testimony in TCPA cases but have declined to give it sufficient weight at the summary judgment stage to create a genuine dispute of fact. *See, e.g., Marshall v. CBE Group, Inc.*, 2018 WL 1567852, at *8 (D. Nev. Mar. 30, 2018) (finding that Snyder's testimony could not create a genuine dispute of material fact because "Snyder never inspected the . . . system at issue in this case").

Snyder's failure to inspect On Deck's actual equipment does not make his proposed testimony *per se* inadmissible. Rather, the Court must ask whether Snyder's opinion has an adequate factual basis to reach the specific conclusions contained in his testimony, despite having never used the Five9 dialer or inspected On Deck's equipment. *Peters-Martin v. Navistar Int'l Transp. Corp.*, 410 F. App'x 612, 618 (4th Cir. 2011) (quoting Fed. R. Evid. 702) (stating that the party seeking to admit an expert witness must demonstrate both that the expert's experience is a sufficient basis for the opinion and that the experience is "reliably applied to the facts"). Fed. R. Evid. 702, Cmt. on 2000 Amendments ("[T]he trial court must scrutinize not only the principles and methods used by the expert, but also whether those principles and methods have been properly applied to the facts of the case."). Snyder's failure to actually inspect the On Deck equipment would surely render certain testimony inadmissible, *e.g., Bakov v. Consolidated World Travel, Inc.,* No. 15-c-2080, 2019 WL 1294659, at *9 (N.D. Ill. Mar. 21, 2019) (finding that Snyder's review of documents and testimony rendered unreliable his opinion that calls made by defendant were pre-recorded), but to rule that Snyder's preparation fails to form a reliable basis for any testimony on the Five9 dialer whatsoever would be an overbroad conclusion.

Snyder's proposed testimony includes the following conclusions: "(i) the Five9 dialer has multiple software dialing functions, of which several have automatic dialing capabilities; (ii) each

8

dialing mode is simply a software function within the overall Five9 dialer system; (iii) the administrative manuals and user guides are reliable and accurate reflections of the Five9 dialer system; and (iv) the Five9 dialer system has the capacity to store or produce numbers to be called, using a random or sequential number generator, and has the capacity to dial numbers from a stored list of numbers automatically." (Dkt. 80 at 3; dkt. 80-1 ¶¶ 58-62).

Plaintiff alleges that Snyder formed the factual basis to reach these conclusions from the following: Snyder's thirty-four years of experience in telecommunications network and system architecture, engineering, design and technology; a review of the sworn testimony of Brandon Ellison, an OnDeck Telemarketer, and Thomas Nelson, an OnDeck corporate officer ; the "Agent's Guide" for the "Five9 Plus Adapter for Salesforce" and Five9's "Campaign Administrator's Guide." (Dkt. 80 at 5-6).

Snyder's first, second, and fourth conclusions are permissible based on his established familiarity with similar dialing systems, his expertise with telecommunications technology, and his review of Five9 literature.  Not one of these three conclusions necessarily depend upon any knowledge of On Deck's equipment in use today or in June 2017.  However, Snyder's third conclusion—that the literature in question reliably and accurately reflects the Five9 dialer system—is more problematic, because the accuracy of Five9 literature is a necessary predicate for Snyder to be able to reach the other three conclusions, since Snyder relied upon the Five9 literature in order to draw those conclusions.  *Hall v. Norton Co.*, 166 F.3d 1209 (4th Cir. 1998) ("A court may refuse to allow an expert to testify if his factual assumptions are not supported by the evidence."). If the information contained in the Five9 literature is inaccurate, then Snyder would fail to have an adequate factual basis to reach *any* of his other three conclusions.

9

Snyder has never used the Five9 dialer system. (Dkt. 76-2 at 75-76). He has never used its Manual Touch Mode nor seen it in use. (Dkt. 76-2 at 28-29). Snyder has performed no comparison between the literature and the Five9 dialer—using On Deck equipment or otherwise—to reach a conclusion as to the literature's accuracy. *Id*. at 75-78. Simply put, Snyder has no apparent basis to opine as to whether the literature bears at all on the Five9 dialer.

Despite this, On Deck's expert Adam Sorini in his deposition states unequivocally that the manuals reviewed by Snyder are accurate representations of the Five9 dialer. (Dkt. 80-2 at 132) ("For the specific manuals in this case, I think, for the most part, they are reliable and accurate."). This provides the necessary predicate for Snyder's factual basis to suffice for the conclusions reached about the Five9 dialer. But regardless, while this evidence allows Snyder to reach his first, second, and fourth conclusions, it cannot cure the lack of any factual basis as to his third conclusion. *Bakov v. Consol. World Travel, Inc.*, No. 15 C 2980, 2019 WL 1294659, at *9 (N.D. Ill. Mar. 21, 2019) ("An expert opinion that simply accepts and regurgitates facts without any testing, corroboration, or analysis is suspect and fails to satisfy Rule 702."). Snyder's testimony must be appropriately cabined given his failure to actually inspect On Deck's equipment. Therefore, because Snyder does not have a reliable factual basis to conclude that the manuals and guides he reviewed reliably and accurately represent the Five9 dialer, On Deck's motion to strike the testimony of Plaintiff's expert Randall Snyder is denied except to the extent that Snyder testifies that the manuals and other literature reviewed in connection to this case reliably reflect the functions and capabilities of the Five9 dialer.

10

B.  **Motion for Summary Judgment**

1.  **Rule 56 - Legal Standard**

Fed. R. Civ. P. 56(a) provides that a court should grant summary judgment if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). The nonmoving party must "show that there is a genuine dispute of material fact . . . by offering sufficient proof in the form of admissible evidence." *Id.* (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Id.* "Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

2.  **Motion for Summary Judgment - Analysis**

The sole issue raised by On Deck's motion for summary judgment is whether Plaintiff has raised sufficient evidence to show a genuine dispute that On Deck called Plaintiff using an "automatic telephone dialing system" (ATDS), defined under the TCPA as "equipment" with the "capacity" to: "(A) store or produce telephone numbers to be called, using a random or sequential number generator; and (B) dial such numbers." 47 U.S.C. § 227; *see also Musenge v. SmartWay*

11

*of the Carolinas, LLC*, 2018 WL 4440718, at *3 (W.D. N.C. Sept. 17, 2018) (recognizing this definition).

Although the Fourth Circuit has not yet had occasion to define the term "capacity" with respect to an ATDS, other circuits have addressed the issue. "[W]hat makes a device an ATDS is not its latent potential capacity to function as an autodialer, but its *present capacity* to function as [an] autodialer." *Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018) (emphasis added); *see also King v. Time Warner Cable Inc.*, 894 F.3d 473, 481 (2d Cir. 2018) ("[W]e conclude that the term 'capacity' in the TCPA's definition of a qualifying autodialer should be interpreted to refer to a device's current functions, absent any modifications to the device's hardware or software."); *ACA International v. FCC*, 885 F.3d 687, 669 (D.C. Cir. 2018) (rejecting FCC's interpretation of "capacity" as including any latent or potential capacity, noting that this interpretation "invites the conclusion that all smartphones are autodialers" since ordinary smartphones *could* achieve autodialer functionality simply by downloading a random-number-generating app).

Most courts recognize that in addition to having the capacity to "store and produce telephone numbers to be called using a random or sequential number generator," an ATDS must have the ability to "dial numbers without human intervention." *See, e.g., Glasser v. Hilton Grand Vacations Co., LLC*, 341 F.Supp.3d 1305, 1308 (M.D. Fla. Sept. 24, 2018) (noting this test, citing FCC rulings left intact by D.C. Circuit's ruling in *ACA International*); *Somogyi v. Freedom Mortgage Corporation*, 2018 WL 3656158, at *6 (D. N.J. Aug. 2, 2018) (noting the "human intervention" test). "[C]ourts have consistently held that dialing systems where all calls are initiated manually do not qualify as ATDSs." *Id.* Thus, dialing systems that require callers to click dialogue boxes or other features to initiate calls have been deemed to require human

12

intervention and not qualify as ATDSs. *See, e.g., Pozo*, 2016 WL 7851415, at *4; *Hatuey v. IC System, Inc.*, 2018 WL 5982020, at *7 (D. Mass. Nov. 14, 2018) (finding dialing system did not qualify as an ATDS because "a human 'clicker agent' . . . must manually click a button to place a call"). Moreover, dialing systems that require the caller to manually enter the telephone number to be called are generally found not to qualify as ATDSs. *See, e.g., Wesley v. Universal Recovery Corp.*, 2016 WL 9138057, at *2 (C.D. Ca. Cot. 12, 2016) (finding that dialing system did not qualify as an ATDS where the system required a caller to "pick up the telephone handset and dial the 10-digit number to place the call").

There is no dispute that the specific call in question was placed on a telephone in "Manual Touch Mode." In this mode, Salesforce—On Deck's "account record database" that stores telephone numbers—automatically populates an agent's next phone number, the agent must manually key in the populated number, and the call will not be initiated unless the phone number is correctly input by the agent and the agent clicks "Dial." (Dkt. 36 at 6-7; dkt. 74 at 6-8, 19). There is no dispute that the call to Plaintiff came from On Deck's Sales Department, and that the Sales Department has access to a domain that includes only the "Manual Touch Mode" and the "Preview Mode," which operates similarly to Manual Touch Mode by presenting an agent with a prospective customer's file, populating the number once the agent clicks "Call Customer," and then only making the call once the agent manually keys in the number or clicks each digit using a mouse. (Dkt. 36 at 8). There is also no dispute that two of On Deck's other departments—collections and customer service—use the Five9 Virtual Contact Center ("VCC") domain, which includes dialing modes such as the "Power Mode," "Progressive Mode," and "Predictive Mode" that do have the capacity to store and produce numbers using a random or sequential number

13

generator and then automatically dial such numbers (*i.e.,* almost certainly would qualify as ATDSs). (Dkt. 74 at 5-6; dkt. 75 at 5-6).

In essence, then, the parties do not dispute that the call made to Plaintiff was made in a dialing mode that, in and of itself, would not qualify as an ATDS, since agents using "Manual Touch Mode" are required to input the number and click "Dial." What the parties dispute is whether the Manual Touch Mode domain is its own "system" or, alternatively, simply one domain in a larger system that includes other modes that do qualify as ATDSs (*i.e.,* the "VCC" domain and its Power, Progressive, and Predictive dialing modes). If the former is true, then the call to Plaintiff was not made on a "system" with the "capability" for automatic dialing as required by the TCPA. If the latter is true, then the call Plaintiff received —although completed on a dialing mode that does not involve automatic dialing—may still violate the TCPA because it occurred on equipment that is part of a larger system that has the capacity for automatic dialing.

On Deck presents evidence that the VCC and Manual Touch Mode telephones use separate hardware, separate software, a separate server, separate settings, and are administered separately, and therefore constitute separate systems. (See, e.g., dkt. 75-5 15-16 (O'Sullivan Decl.); dkt. 75-4 at 5 (Nelson Depo.); dkt. 75-3 52-61 (Sorini Report)). On Deck also presents evidence that at the time of the June 2017 call to Plaintiff, members of the Sales Department in the New York office from which the call was placed sat in their own separate workspace and were not able to log into domains other than the Manual Touch Mode domain. (*See, e.g.*, Dkt. 75-4 at 8, 13 (Nelson Depo.); dkt. 75-3 58 (Sorini Report)). And, as discussed above, it is undisputed that the call to Plaintiff occurred in June 2017, was made by a Sales Department agent working in the New York office, and was made using the Manual Touch Mode dialing system, which does not allow automatic dialing and requires human intervention such as dialing and clicking to place a call.

14

Plaintiff in turn offers several pieces of evidence to present its characterization of Manual Touch Mode as part of an overall system that includes the capacity for automatic dialing. First, Plaintiff points to Snyder's proposed expert testimony that Manual Touch Mode is "simply a software function within the overall dialing system equipment" used by On Deck, and that this overall system includes other modal software functions such as the Power and Progressive modes that do have the capacity for automatic dialing. (Dkt. 74 at 10; dkt. 74-3 ¶¶ 39-52).

Second, Plaintiff points to deposition testimony providing that "[r]egardless of department, each OnDeck agent is equipped with nearly identical hardware—a laptop, two monitors, mouse, keyboard, and headset" and that each laptop is loaded with "the Five9 dialer software, a program called 'Salesforce,' and a program called the 'Five9 Plus Adapter for Salesforce.'" (Dkt. 74 at 6). More importantly, Plaintiff cites testimony that "[m]ultiple domains can be accessed from the same physical workstation" if the user has login information for that module. *Id*.

Finally, Plaintiff points to deposition testimony that a select few On Deck employees with logins to multiple modules can quickly and easily switch between domains (for instance, from Manual Touch Mode into another mode that allows automatic dialing). (Dkt. 74-2 at 72-73). Again, Plaintiff does not contend that this was how he was called, nor does Plaintiff need to contend as much. But Plaintiff's evidence does establish the following: 1) an On Deck agent called Plaintiff from a workstation equipped with Salesforce, the "Five9 Plus Adapter for Salesforce," and Five9's Manuel Touch Mode; 2) an On Deck employee with the correct login could access other modules in the Five9 ecosystem from that workstation; 3) among these are modules with the capacity to store and produce numbers using a random or sequential number generator and then automatically dial such numbers; and that these various modules together constitute a single system. Together, this at least creates a genuine dispute of fact that the call to Plaintiff was made

15

from a device with the "present capacity to function as [an] autodialer." *Dominguez on Behalf of Himself v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018). Thus, because a genuine dispute of fact remains in this litigation, Defendant is not entitled to summary judgment.

### III. CONCLUSION

The Testimony of Plaintiff's expert Randall Snyder is, for the most part, admissible under *Daubert* and FRE 702, but because Snyder has never used or observed the Five9 dialer, his testimony is stricken to the extent that he testifies as to the accuracy of the manuals and other literature he reviewed as it pertains to the Five9 dialer. Even so limited, this testimony, coupled with other evidence offered by Plaintiff, suffices to create a genuine dispute of fact as to whether On Deck's call to Plaintiff was made on a device that constitutes an ATDS under the TPCA. Based on the evidence in the record and construing all reasonable inferences in favor of Plaintiff, a jury could reasonably conclude that the equipment used by On Deck to call Plaintiff in June 2017 constituted a system with automatic dialing capabilities. Accordingly, the Court denies On Deck's motion for summary judgment.

An appropriate order will issue.

Entered on this __29th__ day of August, 2019.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE